717 F.2d 574
 1984 A.M.C. 2999, 230 U.S.App.D.C. 297
 Paul D. JOHNSON, Appellant,
v.
BECHTEL ASSOCIATES PROFESSIONAL CORPORATION, D.C., et al.
(Three cases).
Howard L. EIGHMEY, et al., Appellants,
v.
BECHTEL CIVIL AND MINERALS, INC., et al.
Calvin WALKER, et al., Appellants,
v.
BECHTEL CIVIL AND MINERALS, INC., et al.
John Warren CLANAGAN, Appellant,
v.
BECHTEL ASSOCIATES PROFESSIONAL CORPORATION, D.C., et al.
(Three cases).
Calvin WALKER and Rena Walker, Appellants,
v.
BECHTEL ASSOCIATES PROFESSIONAL CORPORATION, D.C., et al.
Howard L. EIGHMEY, et al., Appellants,
v.
BECHTEL ASSOCIATES PROFESSIONAL CORPORATION, D.C., et al.
Stanley WILMES, Appellant,
v.
BECHTEL ASSOCIATES PROFESSIONAL CORPORATION, D.C., et al.
(Two cases).
James H. BUCHANAN and Shirley Buchanan, his wife, Appellants,
v.
BECHTEL ASSOCIATES PROFESSIONAL CORPORATION, D.C., et al.
Calvin WALKER, et al., Appellants,
v.
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY.
Howard L. EIGHMEY, et al., Appellants,
v.
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al.
Glenwood WILLIAMS, Appellant,
v.
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY.
 Nos. 82-2017, 82-1784, 82-1809, 82-1813, 82-1899, 82-2062,
82-2063, 82-2148, 82-2374, 82-2458, 82-2459,
82-2525, 82-2529, 82-2530, 82-2531 and 83-1003.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 28, 1983.
Decided Aug. 19, 1983.
 
 Appeals from the United States District Court for the District of Columbia (D.C. Civil Action Nos. 81-00963, 81-01261, 81-01125, 81-01481, 81-00114, 81-03057 and 82-00999).
 Peter J. Vangsnes and William F. Mulroney, Washington, D.C., with whom James M. Hanny and Michelle A. Partiff, Washington, D.C., were on the brief, for appellants. Michael H. Feldman, Washington, D.C., also entered an appearance for appellants.
 Gary W. Brown, Washington, D.C., with whom James F. Bromley, James W. Greene, William G. Schaefer and Ronald Flagg, Washington, D.C., were on the brief, for appellees, Bechtel Associates Professional Corporation, et al. Catherine H. Lesica and Elaine L. Johnston, Washington, D.C., also entered appearances for appellees, Bechtel Associates Professional Corporation, et al.
 Vincent H. Cohen, Washington, D.C., with whom Robert B. Cave, Washington, D.C., was on the brief, for appellee, Washington Metropolitan Area Transit Authority.
 Robert L. Ellis, Edward J. Lopata, J. Joseph Barse, F. Wainwright Barnes, and Laurence T. Scott, Washington, D.C., were on the joint brief of amici curiae, Metro Subway Const. Contractor/Employers.
 Before ROBINSON, Chief Judge, WRIGHT, Circuit Judge and MacKINNON, Senior Circuit Judge.
 Opinion for the Court filed by Senior Circuit Judge MacKINNON.
 MacKINNON, Senior Circuit Judge:
 
 
 1
 These consolidated appeals[1] arise from negligence actions instituted by employees of contractors who performed underground work on the Washington Metropolitan Area Transit subway project (Metro). With the exception of Eighmey who was injured in a construction accident, the appellants allegedly sustained respiratory injuries as a result of exposure to high levels of silica dust and other industrial pollutants in the subway project. The injured employees all filed workmen's compensation claims and received compensation awards. The employees then instituted third-party negligence actions against either the Washington Metropolitan Area Transit Authority (WMATA or the Authority)[2] or Bechtel,[3] the safety engineer for the project.
 
 
 2
 Because of the nature of the contractual relationship between the parties, WMATA or Bechtel appeared to be a proper third-party defendant. WMATA exercises the ultimate control of and authority for the construction and operation of the subway system. WMATA contracted with Bechtel to provide safety engineering services. Contracts for the actual construction work were awarded to a variety of subcontractors. Appellants were employees of these subcontractors.
 
 
 3
 In the district court each defendant, WMATA or Bechtel, moved for and was granted summary judgment. Appellants contest these judgments and present four issues for our resolution. We discuss each issue separately and conclude:
 
 
 4
 (1) Bechtel was an agent of WMATA and therefore, under section 80 of the Compact, WMATA is exclusively liable for Bechtel's torts. Accordingly we affirm the grant of summary judgment to Bechtel on this issue.
 
 
 5
 (2) WMATA is not entitled to the immunity accorded to employers under section 905(a) of the Longshoremen's Act. Accordingly we reverse the grant of summary judgment to WMATA on this issue.
 
 
 6
 (3) A more complete factual record is necessary to determine whether, under Fed.R.Civ.P. 15(c), WMATA was properly added as a defendant. Accordingly we remand these cases.
 
 
 7
 (4) Under section 33(b) of the Longshoremen's Act an injured employee cannot institute a third-party negligence action after the expiration of the six-month period following acceptance of a compensation award. Accordingly we affirm the dismissal of the Williams case.
 
 I. SECTION 80 OF THE WMATA COMPACT
 
 8
 Defendant Bechtel based its motion for summary judgment upon section 80 of the WMATA Compact.[4] Section 80 establishes WMATA's contract and tort liability and provides:
 
 
 9
 The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this Title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the Zone of any immunity from suit.
 
 
 10
 Bechtel asserted that it functioned as an "agent" of WMATA when performing its safety duties, and was therefore entitled to immunity from negligence actions by operation of section 80 of the Compact. Bechtel argued that WMATA was exclusively liable for any work-related tortious injury suffered by the employees. Each district court which considered this issue found that Bechtel was an agent of WMATA within the meaning of section 80 and granted summary judgment.[5] We affirm the judgments of the district courts on this issue.
 
 A. Legal Standard
 
 11
 While conceding that, in its role as safety engineer, Bechtel was an agent of WMATA within the "broadest terms," appellants nevertheless assert that the term "agent" in section 80 of the Compact should be given a narrow construction. Appellants attempt to remove Bechtel from the operation of section 80 by arguing that Bechtel was an "independent contractor"-agent and, therefore, not within the class of "servant"-agents for whom a principal is vicariously liable. However, this attempted distinction, based primarily upon the Restatement (Second) of Agency (1958), fails because resolution of this issue turns on the use of the word "agent" within a statute expressly designed to shift liability exclusively to the principal, WMATA.[6] While resort to the Restatement may be informative, it is not dispositive; instead, we look to the statute itself.
 
 
 12
 The use of the word "agent" in section 80 is unqualified[7] and there is no reason, under these circumstances, for distinguishing between "independent contractors" who are agents and "servants" who are agents. Guided by accepted rules of statutory construction and noting that there is no indication that the drafters of the Compact intended to use "agent" in a restrictive manner, we accord the term its common and usual meaning. Diamond v. Diehr, 450 U.S. 175, 182, 101 S.Ct. 1048, 1054, 67 L.Ed.2d 155 (1981) ("Unless otherwise defined, 'words will be interpreted as taking their ordinary, contemporary, common meaning,' Perrin v. United States, 444 U.S. 37, 42 [100 S.Ct. 311, 314, 62 L.Ed.2d 199] (1979) ....").
 
 
 13
 An agent is one who is authorized by another (principal) to act on his behalf. An agent-principal relationship is characterized by the presence of two elements. First, there must be an indication by the principal that the agent will act on his behalf and subject to his control. And second, there must be a manifestation of consent by the agent so to act. Restatement (Second) of Agency Sec. 1 (1958); Rose v. Silver, 394 A.2d 1368 (D.C.App.1978). Accord Lott v. Burning Tree Club, Inc., 516 F.Supp. 913, 917 (D.D.C.1980) (Police are not agents of Country Club because not designated as such and Club exercised no control over the police.). The extent of control and consent is evidenced both by the terms of the contract and by the actual dealings between the parties. Applying the foregoing legal standards, we examine the contract between Bechtel and WMATA and the actual on-the-job practice.
 
 B. The WMATA-Bechtel Relationship
 
 14
 WMATA contracted with Bechtel to administer the safety program on the entire subway construction project.[8] Taken as a whole, the contract provides that Bechtel shall act on behalf of and subject to the authority of WMATA. Numerous provisions of the contract specify the exact nature and extent of control which WMATA exercises over Bechtel. For example, Paragraph 1 of the Scope of Services portion of the WMATA-Bechtel contract provides:
 
 
 15
 The [WMATA] Contracting Officer shall be kept fully informed of all operations under this contract and [Bechtel] shall have authority to conduct these operations for and in the name of the Authority [WMATA], subject to the approval of the [WMATA] contracting officer.
 
 
 16
 Article XVI of the General Provisions section of the Contract provides:
 
 
 17
 The extent and character of the work to be done by [Bechtel] shall be subject to the general supervision, direction, control and approval of the [WMATA] Contracting Officer and the authorized representative of the Contracting Officer to whom [Bechtel] shall report and be responsible.
 
 
 18
 In addition to specifying the general working relationship, the WMATA-Bechtel contract provides that all personnel hired by Bechtel for the WMATA project must be approved by WMATA. General Provisions, Art. IX. The salaries of these employees are also subject to approval by WMATA. Special Provisions, Sec. III. Once WMATA approves a Bechtel employee to serve as an on-site Resident Engineer, Bechtel cannot transfer, reassign, or fire him without the Authority's approval.[9]
 
 
 19
 The allocation of authority and responsibility between WMATA and Bechtel is further specified in the Coordinated Safety Program & Reporting Procedures Manual which is specifically incorporated into the WMATA-Bechtel contract. The Safety Manual provides that a full-time WMATA employee, the Contracting Officer, has primary responsibility for overseeing the safety-related aspects of the project. Another WMATA official, the Safety Engineer, is charged with evaluating and directing the activities of the Bechtel Safety Department. Taken as a whole, the WMATA-Bechtel contract provides for extensive and pervasive control by WMATA over Bechtel personnel.
 
 
 20
 The actual day-to-day work performed by Bechtel on the construction sites reinforces the conclusion that Bechtel serves as WMATA's agent.[10] On the job site the Resident Engineer, a Bechtel employee, represents WMATA and is responsible for ensuring that the various contractors comply with WMATA safety regulations. In the discharge of his duties, Bechtel's Resident Engineer is subject to the direction of the WMATA Contracting Officer from whom he receives both written and verbal instructions. Although the Resident Engineer is authorized to direct correction of safety violations, in practice he rarely takes any major action without first consulting WMATA. The Resident Engineers carry business cards identifying them as "Authorized Representative[s] of the Contracting Officer," i.e., WMATA. In their daily work, the Bechtel safety personnel are subject to the direction of WMATA officials and function essentially as WMATA employees.
 
 C. Conclusion
 
 21
 It is unimportant whether the WMATA-Bechtel relationship was a master/servant agency relationship or a principal/independent contractor agency relationship. "Agent," as used in the Compact, is unqualified and, therefore, embraces both types of agency relationships.
 
 
 22
 To determine if a party is an "agent" within the broadest meaning of the term, the court looks to the entirety of the relationship for evidence of consent between the parties to establish a principal-agent relationship and for evidence of the degree of control exercised by the principal. The district courts correctly concluded that both mutual consent and a sufficient degree of control were present in the WMATA-Bechtel relationship to establish that Bechtel acted as an agent of WMATA. By the terms of section 80 of the Compact, therefore, WMATA is exclusively liable for the torts of its agent, Bechtel. We affirm the grant of summary judgment to Bechtel on this issue.
 
 
 23
 II. SECTION 905 OF THE LONGSHOREMEN'S AND HARBOR WORKERS'
 
 COMPENSATION ACT
 
 24
 At the time of their alleged injuries, the appellants were employed by construction companies under contract to WMATA to construct specific segments of the Metro project. These subcontractors did not purchase workmen's compensation insurance for their employees; instead WMATA purchased such insurance to cover all laborers and other employees working on the Metro system. After sustaining an injury, each employee filed for and received workmen's compensation benefits. Exercising their statutory right to sue a third-party tortfeasor, several of the injured employees instituted an action against WMATA.
 
 
 25
 WMATA responded with a motion for summary judgment, asserting that because it obtained and paid for the workmen's compensation insurance required by section 904(a)[11] of the Longshoremen's and Harbor Workers' Compensation Act (the Act), 33 U.S.C. Sec. 901 et seq. (1976 & Supp. V 1981),[12] it was entitled to the statutory immunity accorded to an "employer" under section 905(a).[13] Each federal district court which considered this question granted summary judgment in favor of WMATA.[14] We reverse.
 
 
 26
 In reaching their decisions, the district courts relied exclusively upon the fact that WMATA furnished the workmen's compensation insurance, accepting the argument that section 904(a) employer immunity is a quid pro quo for providing such insurance. The courts premised their quid pro quo conclusion upon the assumption that WMATA was legally required to purchase the compensation insurance. A closer analysis of the language and purpose of the Act and the relevant case law leads to the conclusion that in these circumstances WMATA was not required to provide the compensation insurance. Furthermore, the voluntary provision of such insurance does not entitle the provider to the statutory employer immunity of section 905(a).
 
 
 27
 To analyze the intended operation of the compensation insurance provisions, one must begin with the overall purpose and design of the Longshoremen's Act. As this court acknowledged in Potomac Electric Power v. Wynn, 343 F.2d 295, 296 (D.C.Cir.1965) (footnote omitted):
 
 
 28
 The Longshoremen's and Harbor Workers' Compensation Act must be construed liberally in favor of the injured employee. Narrow statutory construction should not deprive the injured employee of either his compensation or his claim in damages against third parties.
 
 
 29
 This overriding purpose underlies our interpretation of sections 904 and 905 of the Act.
 
 
 30
 The Act is designed to insure that all employees are covered by worker's compensation insurance and will thereby receive prompt compensation for work-related injuries. To assure the availability of compensation, employers are required to carry insurance. 33 U.S.C. Sec. 932 (1976). Failure to do so may result in criminal sanctions. Id. Sec. 938. In return for carrying the required insurance, an employer is absolved from all other liability, even if the employee's injury is attributable to employer negligence. Id. Sec. 905. In the scheme of the Act, not only is the employee entitled to prompt compensation payments, but he also retains the right to sue any third party whose negligence may have caused or contributed to his injuries. Id. Sec. 933. When a job involves a general contractor and subcontractors, the Act requires the subcontractor to obtain the workmen's compensation insurance. Id. Sec. 904. The general contractor is not obligated to obtain insurance "unless" the subcontractor fails to do so. Id.
 
 
 31
 While the Act does not expressly designate who obtains section 905 employer immunity when a general contractor and subcontractor are involved, courts have allowed a general contractor to invoke the statutory immunity only when he was legally required to, and did in fact, provide workmen's compensation insurance. When both the general contractor and the subcontractor carry workmen's compensation insurance, courts have held that only the subcontractor is entitled to statutory immunity. The general contractor is denied section 905(a) immunity because he is not statutorily required to carry insurance. Thomas v. George Hyman Const. Co., 173 F.Supp. 381 (D.D.C.1959). Accord DiNicola v. George Hyman Const. Co., 407 A.2d 670, 674 (D.C.App.1979) ("[T]he Longshoremen's Act[ ] impose[s] on the general contractor the duty to secure compensation insurance only if the subcontractor has failed to do so."); Probst v. Southern Stevedoring Co., 379 F.2d 763, 766 (5th Cir.1967) ("[T]he structure of Secs. 904, 905 ... add up to show that the provision imposing on the general contractor compensation liability to an employee of a subcontractor is a secondary, protective one.").[15]
 
 
 32
 A fundamental premise of the compensation insurance scheme is that the general contractor's statutory duty to secure workmen's compensation insurance is secondary. "The general contractor has a secondary, guaranty-like liability." Probst, supra, 379 F.2d at 767 (emphasis added). The subcontractor is primarily and initially responsible; the general contractor becomes responsible only upon the subcontractor's default. As the court stated in Thomas v. George Hyman, supra, 173 F.Supp. at 383:
 
 
 33
 The law does not accord to the general contractor the choice of either carrying workmen's compensation insurance, or subjecting himself to liability for negligence. The law requires him to carry insurance only if the subcontractor fails to do so. In such a contingency, the general contractor may well be free of all other liability if he in fact carried such insurance. He may not, however, voluntarily take out insurance that the law does not require and thereby secure freedom from liability for negligence.... Release from common law liability is a benefit accruing from carrying compensation insurance only in case the law imposes a duty to do so. One may not escape from such liability by taking out insurance that the law does not require.
 
 
 34
 (Emphasis added). This interpretation clearly comports with the plain language of sections 904 and 905, as well as with the overall statutory scheme.
 
 
 35
 By initially providing the insurance for all employees, WMATA pre-empted the subcontractors' statutory duty to secure such insurance. The language and scheme of the Act, as well as the relevant caselaw, clearly establish that a general contractor may not circumvent the intended operation of the Act by, in effect, choosing between either securing workmen's compensation insurance and thereby obtaining statutory employer immunity, or remaining potentially liable as a third-party tortfeasor. To accord WMATA section 905 employer immunity would frustrate the operation of the Act. WMATA cannot unilaterally decide to purchase the workmen's compensation insurance itself and thereby obtain section 905 immunity. To benefit from securing the insurance, WMATA must first require its subcontractors to purchase the insurance. It is only by providing compensation insurance when the subcontractors fail to do so that WMATA obtains immunity as a statutory employer.
 
 
 36
 WMATA suggests that its circumstance is analogous to the situation wherein the subcontractor fails to obtain insurance or the subcontractor's insurance lapses. In such instances, the statute provides that the general contractor then becomes responsible for assuring that workmen's compensation insurance is provided. However, WMATA's circumstance is not analogous. WMATA did not follow the statutory scheme; instead it pre-empted the proper functioning of the scheme. WMATA, the general contractor, initially provided the workmen's compensation insurance when it was under no legal duty to do so; the Authority thereby supplanted its subcontractors' primary, statutory duty.
 
 
 37
 WMATA attempts to justify its actions by explaining that its wrap-up insurance plan was "the only effective way to ensure that all employees would be covered by compensation insurance at all times." WMATA Reply Brief at 27. WMATA contends that after attempting to require all subcontractors to provide workmen's compensation insurance, it found the task impossible to administer. Therefore, after 1971 WMATA instituted a "coordinated insurance plan" whereby it purchased workmen's compensation insurance for all employees of all subcontractors. Although WMATA asserts that it was primarily concerned with fulfilling its section 904 duty, the Authority also reveals that the wrap-up insurance program "substantially lessen[ed] [its] administrative burden and effectuat[ed] a substantial savings in costs." WMATA Reply Brief at 27-28. That it was more convenient and cost effective to carry the insurance does not excuse deviation from the statutory scheme. Nor does the size of the project affect the intended operation of the statutory provisions. WMATA had no statutory duty to provide insurance until and unless a subcontractor failed in its primary obligation to provide such insurance.
 
 
 38
 The problems caused by WMATA's deviation from the statutory scheme are evident in these cases. To the injured employees it appeared that their respective employers provided the workmen's compensation insurance. Therefore, when compensation claims were filed and paid, the employees reasonably assumed that under section 905(a) of the Act their immediate employer could not be sued for negligence. Consequently, the employees attempted to exercise their statutory right to a third-party action by instituting suit against WMATA. Only then did it become clear who had actually secured and paid for the compensation insurance. For some employees this discovery came too late to institute suit against their immediate employer who might have been a third-party defendant if WMATA was entitled to section 905 employer immunity. The net effect of this scenario was to confuse and confound the injured employee whom the Act was designed to protect. With the statute of limitations running on his third-party claim, it was unclear to the injured employee which entity, if not both, would be entitled to employer immunity.
 
 
 39
 The language and purpose of sections 904(a) and 905(a) of the Longshoremen's and Harbor Workers' Compensation Act, as well as the relevant case law, compels the conclusion that WMATA be denied statutory employer immunity.[16] The Act clearly contemplates that an injured employee can receive compensation benefits and have the right to bring a third-party action. We will not immunize a potential third-party defendant when the only basis for so doing rewards that party for circumventing the statutory scheme. Notwithstanding the fact that it provided the workmen's compensation insurance, WMATA is amenable to suit as a potentially liable third-party tort-feasor. The grants of summary judgment to WMATA are reversed.
 
 
 40
 III. RULE 15(C) OF THE FEDERAL RULES OF CIVIL PROCEDURE
 
 
 41
 In four of the seven actions on appeal, the employees first sued Bechtel and subsequently added WMATA as a defendant by amending their complaint[17] pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.[18] In each instance, WMATA moved for summary judgment on two alternative grounds. First, WMATA asserted that it was not a proper defendant because the requisites of Rule 15(c) were not satisfied. Second, WMATA argued that under section 905(a) of the Longshoremen's Act it was immune from suit as a statutory employer. In each case the district court granted summary judgment for WMATA on the section 905(a) ground and expressly declined to address the Rule 15(c) issue.[19] WMATA seeks to justify the grant of summary judgment in its favor by reurging the contention that it was not properly added as a defendant.
 
 
 42
 Rule 15(c) permits an amendment adding a party to relate back to the date of the original pleading if three conditions are met: (1) the claims against the new party must arise out of the same occurrence as the claims in the original pleading; (2) the new party must have received "notice of the institution of the action" before the limitations period expired; and (3) the new party must know "or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." Norton v. International Harvester Co., 627 F.2d 18, 20 (7th Cir.1980); Hernandez Jimenez v. Calero Toledo, 604 F.2d 99, 102-03 (1st Cir.1979). To permit the addition of a party via a Rule 15(c) amendment, the court must be satisfied that all three tests are met.
 
 
 43
 WMATA argues that two of the Rule 15(c) criteria were not satisfied and, therefore, that it was improperly made a defendant. First, WMATA notes that the amended complaints adding it as a defendant were filed after the statute of limitations on the underlying tort had run. While Rule 15(c) removes a statute of limitations bar by allowing the amended complaint to "relate back" to the date of the original filing, the party to be added must have received sufficient "notice" of the action so that it is not prejudiced in maintaining a defense. WMATA contends, inter alia, that it received notice only upon the actual filing of the amended complaint and that because that filing was made after the expiration of the statute of limitations, such notice is per se insufficient. Plaintiffs-appellees counter that because of the "identity of interests" between WMATA and Bechtel, WMATA received constructive notice prior to the expiration of the statutory period. In addition, plaintiffs-appellees assert that WMATA has not been prejudiced by receiving such belated notice. WMATA also contends that the "mistake" requirement of Rule 15(c) was not satisfied because the plaintiffs did not initially make a "mistake" regarding the proper party to be sued, but rather made a tactical decision to sue Bechtel. Plaintiffs-appellees assert that they did in fact make a reasonable legal "mistake" in choosing the original defendant.
 
 
 44
 Because resolution of these issues in the context of a Rule 15(c) decision involves inherently factual determinations, a complete factual record is required. McCurry v. Allen, 688 F.2d 581, 585 (8th Cir.1982) (Remanded for an evidentiary hearing and findings of fact because "[t]he requirements of Rule 15(c) raise factual issues not susceptible to determination at the appellate level."); Ringrose v. Engelberg Huller Co., 692 F.2d 403 (6th Cir.1982). Furthermore, on the motion for summary judgment each district court expressly declined to reach the Rule 15(c) issue. This court will not, therefore, resolve this issue notwithstanding the fact that it has been briefed and argued. We express no opinion on the resolution of this issue, leaving the matter in the first instance to the district courts. The cases are remanded for the development of an adequate factual record and a ruling by the district courts on the propriety of adding WMATA as a defendant by a Rule 15(c) amendment.
 
 
 45
 IV. SECTION 933(B) OF THE LONGSHOREMEN'S AND HARBOR WORKERS' ACT
 
 
 46
 On August 28, 1981, appellant Williams received a lump-sum workmen's compensation award. More than six months later, on April 1, 1982, Williams instituted a third-party negligence action against WMATA. The district court dismissed Williams' action because it was not filed within the six-month statutory period as provided in 33 U.S.C. Sec. 933(b).[20] Williams v. Washington Metropolitan Area Transit Auth., No. 82-0999 (D.D.C. Oct. 6, 1982). Williams challenges the district court's dismissal of his action and attempts to excuse his delay in instituting suit by relying upon the so-called "Czaplicki exception," fashioned by the Supreme Court in Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 76 S.Ct. 946, 100 L.Ed. 1387 (1956).
 
 
 47
 In Czaplicki, an injured employee accepted a workmen's compensation award which, under the statute as it existed then, effected an automatic assignment of his third-party claims to his employer. In turn, his employer's insurer was subrogated to the employer's rights. Seven years after receiving the compensation award, when no third-party action had been filed, Czaplicki instituted a negligence action against several potentially liable third-parties. Czaplicki's employer and one of the third-party defendants were insured by the same company, Travelers Insurance Company. Recognizing that the substantial conflict of interests inherent in this circumstance made it extremely unlikely that the insurer would proceed against this third-party, the Czaplicki Court held that section 33(b) did not prevent the employee from pursuing his third-party action. The Court reasoned that in order to insure that a party with sufficient adversarial interests remained to institute a third-party action, the employee would be permitted to maintain his action, notwithstanding the fact that he had accepted an award of compensation. The Czaplicki Court found it significant that there was "no other procedure by which [the employee could] secure his statutory share in the proceeds, if any, of his right of action." Id. at 532-33, 76 S.Ct. at 950-951.
 
 
 48
 In 1959, after Czaplicki, Congress amended the relevant provisions of the Act to their present form by eliminating the election requirement under subsection (a), postponing assignment of the claim under subsection (b) until six months after acceptance of a compensation award, and allowing the assignee to retain twenty percent of any excess recovery as a financial incentive to pursue a third-party action. Act of August 18, 1959, Pub.L. No. 86-171, 73 Stat. 391. Under the statute as amended, an injured employee is not required to elect between receiving a workmen's compensation award and seeking damages from a third party. 33 U.S.C. Sec. 933(a). The employee may accept a compensation award and, as long as he acts within six months, institute an action against any potentially liable third party. If, however, he fails to institute suit within six months, acceptance of the compensation award acts as an assignment to the employer of any and all third-party claims which the employee might have. Id. Sec. 933(b). The insurer of the employer continues to be subrogated to all rights of the employer. Id. Sec. 933(h).
 
 
 49
 Following amendment of the Act, the Supreme Court held, in Rodriquez v. Compass Shipping Co., 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981), that failure to institute a third-party action within the statutory six-month period was an absolute bar to a subsequent action by the employee. Although Rodriquez did not involve a Czaplicki conflict-of-interest and the Court expressly declined to reach the Czaplicki scenario,[21] the opinion for the Court cast serious doubt upon the viability of the Czaplicki conflict-of-interest exception. The Rodriquez Court was careful to confine Czaplicki to the "peculiar facts" of that case and emphasized the importance of the intervening amendments in alleviating the hardship which existed in the Czaplicki circumstance. The Court stated:
 
 
 50
 [T]he 1959 and 1972 Amendments have substantially undercut the basis for the Czaplicki exception to Sec. 33(b). The Court was troubled in Czaplicki because under the Act in 1956 there was "no other procedure" by which a longshoreman could enforce his rights against a third party where the employer failed to sue due to a conflict of interest. 351 U.S., at 532-533 [76 S.Ct., at 950-951]. After the 1959 amendments, there is such a procedure: the employee may simply file his own third-party suit within six months after accepting compensation.
 
 
 51
 Rodriquez, supra, 451 U.S. at 617 n. 41, 101 S.Ct. at 1958 n. 41. Relying upon the express statutory language, the Rodriquez Court emphasized the mandatory nature of the assignment which occurs after the six-month period. "Congress unequivocally made the choice in favor of first giving the employee exclusive control of the cause of action for a 6-month period and then giving the employer exclusive control thereafter, instead of opting for any form of simultaneous joint or partial control." Id. at 612, 101 S.Ct. at 1955. Finally, the Court reasoned that the legislative history "forecloses the argument that Congress did not intend an assignment of a third-party claim to be effective unless there was an absence of any potential conflict of interest between the assignee and the [employee]." Id.
 
 
 52
 Considering Czaplicki, Rodriquez, and the statute as it exists today, we conclude that the Czaplicki exception no longer permits an employee to institute a third-party action after the six-month statutory window.[22] Given the statutory language and legislative history relied upon by the Rodriquez Court, it is apparent that reading a Czaplicki exception into the section 33(b) assignment scheme would frustrate the balance struck by Congress between the employer's and employee's interests. That balance alleviates the hardship which Czaplicki was crafted to remedy. Acceptance of a compensation award no longer automatically assigns the employee's third-party claims to his employer. Where the employee suspects a potential Czaplicki conflict-of-interest he has six months after accepting a compensation award within which to institute suit himself.
 
 
 53
 For the foregoing reasons, we do not think that the Czaplicki exception survived the post-Czaplicki amendment of the Act and Rodriquez. Plaintiffs who accept compensation awards must comply with section 33(b) and institute any third-party claims within six months of accepting such award. Because Williams failed to institute his action within the statutory time frame the district court properly dismissed the action. The fact that both parties were insured by the same compensation carrier does not excuse the plaintiff's delay in instituting his third-party claim. The judgment of the district court is affirmed.
 
 V. CONCLUSION
 
 54
 The Clerk is directed to issue judgments in the respective cases in accordance with the foregoing opinion.
 
 
 
 [1]
 Because of the similarity of issues in the numerous actions growing out of the WMATA construction, the court ordered these appeals consolidated and expedited. Johnson v. Bechtel Assoc. Prof. Corp., No. 82-2017 (D.C.Cir. Jan. 7, 1983)
 
 
 [2]
 The Washington Area Metropolitan Transit Authority (WMATA or the Authority) is a legal entity created by and deriving its authority from an interstate compact (Compact) entered into by Maryland, Virginia, and the District of Columbia with the consent of Congress. U.S. Const. art. I, Sec. 10, cl. 3. WMATA was formed to develop and operate a transit system (Metro) in the District of Columbia metropolitan area. Pub.L. No. 89-774, 80 Stat. 1324 (1966) (codified at D.C.Code Sec. 1-2431 (1981)). The Authority may sue and be sued. Compact Sec. 12
 
 
 [3]
 Two Bechtel entities were sued in the district court actions, Bechtel Civil and Minerals, Inc., a Nevada corporation, and its local affiliate, Bechtel Associates Professional Corporation. The two corporations are indistinguishable for the purposes of these appeals and therefore will both be referred to simply as "Bechtel."
 
 
 [4]
 See note 2 supra
 
 
 [5]
 Appellants challenge the grant of summary judgment on the section 80 issue in the following cases: Johnson v. Bechtel Assoc. Prof. Corp., 545 F.Supp. 783 (D.D.C.1982); Walker v. Bechtel Civil and Minerals, Inc., No. 81-1125 (D.D.C. July 8, 1982); Clanagan v. Bechtel Assoc. Prof. Corp., No. 81-1481 (D.D.C. July 8, 1982); Eighmey v. Bechtel Civil and Minerals, Inc., No. 81-1261 (D.D.C. June 21, 1982)
 
 
 [6]
 Appellants' reliance on the Restatement is misplaced. While the Restatement does distinguish between "servants" and "independent contractors" for some purposes, it also makes clear that both "servants" and "independent contractors" may be agents. Restatement (Second) of Agency Sec. 2 (1958)
 Section 251 of the Restatement, applied to the situation herein, obviates the need for any distinction between "servants" and "independent contractors" or "non-servants agents."
 Sec. 251. Liability for Physical Harm Caused by a Servant or a Non-servant Agent
 A principal is subject to liability for physical harm to the person ... of another caused by the negligence of a servant or a non-servant agent:
 (a) in the performance of an act which the principal is under a duty to have performed with care ....
 Restatement (Second) of Agency Sec. 251 (1958).
 WMATA, the principal, had a duty to protect workers from physical harm caused by the construction of Metro. By entrusting the performance of that duty to an agent (Bechtel), WMATA is liable for any harm caused by its agent's negligence, regardless of whether the agent was a servant or an independent contractor. See Restatement (Second) of Agency Sec. 251 comment (a) (1958).
 
 
 [7]
 Appellants suggest that the legislative history of the Compact reveals that the term "agent" was intended to have an extremely narrow meaning. The only "legislative history" cited by appellants is a Senate Judiciary Committee Staff paper which, appellants purport, explains the purpose of section 80
 Liability for Contracts and Torts
 (Article XVI sec. 80)
 This would make the Authority [WMATA] liable for its contracts and torts and the torts of its personnel (emphasis added) committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws). It would absolve the Authority from liability for torts occurring in the performance of a governmental function, and provides that this section would not constitute a waiver by any of the signatories or their subjurisdictions of any immunity from suit.
 Ludolph Brief at 22.
 Based upon this statement, appellants argue that the intent of section 80 was to immunize only individuals acting as agents and not "large corporate entities such as Bechtel." This argument is not persuasive. The "legislative history" relied upon is little more than a loose restatement of the statute. Without more, such statements cannot serve to narrow the meaning of an unambiguous statutory term.
 
 
 [8]
 The annual contracts executed by WMATA and Bechtel from 1971 until the present did not change significantly from year-to-year. The relevant portions of these contracts are exhibits in the district court record in Johnson v. Bechtel Assoc. Prof. Corp., No. 81-0963, and all references to the contracts are to the district court record
 
 
 [9]
 At a hearing conducted by the district court in Johnson v. Bechtel Assoc. Prof. Corp., No. 81-0963, on May 17, 1982, John S. Egbert, Assistant General Manager for Design and Construction for WMATA (Contracting Officer), testified to the working relationship between WMATA, Bechtel, and the subcontractors. The relevant testimony is contained in Appellees Record Excerpts 22-23, 31, and 51
 
 
 [10]
 See note 9 supra
 
 
 [11]
 The Act, 33 U.S.C. Sec. 904(a) (1976), provides:
 (a) Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908 and 909 of this title. In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to the employees of the subcontractor unless the subcontractor has secured such payment.
 
 
 [12]
 The District of Columbia Workers' Compensation Act, D.C.Code Sec. 36-501 et seq. (1973), adopted the provisions of the federal Longshoremen's and Harbor Workers' Compensation Act. For simplicity, the Act will be referred to by the federal statute section numbers
 
 
 [13]
 33 U.S.C. Sec. 905(a) (1976) provides:
 (a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee ....
 
 
 [14]
 Appellants challenge the grant of summary judgment on the section 905(a) issue in the following cases: Wilmes v. Washington Metropolitan Area Transit Auth., No. 81-0114 (D.D.C. Dec. 16, 1982); Buchanan v. Bechtel Assoc. Prof. Corp., No. 81-3057 (D.D.C. Nov. 19, 1982); Williams v. Washington Area Metropolitan Transit Auth., No. 82-0999 (D.D.C. Oct. 6, 1982); Clanagan v. Washington Metropolitan Area Transit Auth., No. 81-1481 (D.D.C. Sept. 2, 1982); Walker v. Washington Metropolitan Area Transit Auth., No. 81-1125 (D.D.C. Sept. 2, 1982); Johnson v. Bechtel Assoc. Prof. Corp., No. 81-0963 (D.D.C. Aug. 24, 1982); Eighmey v. Bechtel Assoc. Prof. Corp., No. 81-1261 (D.D.C. July 30, 1982)
 
 
 [15]
 Probst expressly reserved
 the question of what ought to be done if the general contractor, or general employer, is actually required to pay compensation benefits to the injured employee of the subcontractor under Sec. 904.
 379 F.2d at 767 (footnote omitted) (emphasis added). However, the question left open in Probst is not the precise issue herein. WMATA was not "required" to obtain workmen's compensation insurance under section 904. WMATA voluntarily assumed that responsibility.
 The fact that WMATA voluntarily obtained compensation insurance also distinguishes the WMATA case from Fiore v. Royal Painting Co., 398 So.2d 863 (Fla.Dist.Ct.App.1981). In Fiore, the subcontractor's insurance lapsed unbeknownst to the general contractor. Following the work-related death of an employee of the subcontractor, the general contractor paid direct benefits to the decedent's widow and children. In a subsequent wrongful death action, the defendant-contractor moved for and obtained summary judgment based upon section 905(a) employer immunity.
 Reversing the grant of summary judgment on appeal, the Fiore court held that the general contractor was not entitled to statutory immunity. The court rejected the general contractor's quid pro quo argument and construed the Act to allow immunity only to the "actual employer (in this type of situation, a complying subcontractor)." Id. at 865. The Fiore court denied statutory immunity to the general contractor, notwithstanding the fact that his subcontractor had defaulted and the general contractor had in fact assumed his obligation under the statute. Fiore represents an extreme interpretation of the Act and is distinguishable on its facts.
 
 
 [16]
 We express no opinion on the issue whether the subcontractors have "secure[d]" compensation insurance under section 904(a) and would thereby be entitled to immunity
 
 
 [17]
 In the following cases the district courts allowed the plaintiff to amend his complaint to add WMATA as a defendant: Johnson v. Bechtel Assoc. Prof. Corp., No. 81-0963 (D.D.C. May 18, 1982); Buchanan v. Bechtel Assoc. Prof. Corp., No. 81-3057 (D.D.C. July 7, 1982); Clanagan v. Washington Metropolitan Area Transit Auth., No. 81-1481 (D.D.C. July 8, 1982); Wilmes v. Washington Metropolitan Area Transit Auth., No. 81-0114 (D.D.C. July 13, 1982)
 In Wilmes, the plaintiff also sought to amend his complaint via Rule 15(c) to add the subcontractors as defendants. The district court denied plaintiff's motion to amend. Wilmes v. Washington Metropolitan Area Transit Auth., No. 81-0114 (D.D.C. Dec. 16, 1982). Wilmes appeals this denial and for the reasons stated in this section of our opinion, we remand this aspect of the case also. A more complete factual record is a prerequisite for review of a Rule 15(c) decision.
 
 
 [18]
 Rule 15(c) of the Federal Rules of Civil Procedure provides:
 (c) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
 
 
 [19]
 Johnson v. Bechtel Assoc. Prof. Corp., No. 81-0963, slip op. at 1 (D.D.C. Aug. 24, 1982); Clanagan v. Washington Metropolitan Area Transit Auth., No. 81-1481, slip op. at 6 n. 2 (D.D.C. Sept. 3, 1982); Buchanan v. Bechtel Assoc. Prof. Corp., No. 81-3057, slip op. at 2 (D.D.C. Nov. 19, 1982); Wilmes v. Washington Metropolitan Area Transit Auth., No. 81-0114 (D.D.C. 16, 1982)
 
 
 [20]
 Section 33(b) of the Longshoremen's Act, 33 U.S.C. Sec. 933(b) (1976), provides:
 Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.
 
 
 [21]
 In a footnote the Rodriquez Court stated:
 Whether the statutory language [section 33(b) ] provides the exclusive solution for unusual conflict-of-interest problems, such as that identified in Czaplicki, is a question that is not presented on the facts of these cases. We accordingly do not decide whether, or to what extent, Czaplicki survived the 1959 amendments.
 451 U.S. at 612 n. 30, 101 S.Ct. at 1955 n. 30.
 
 
 [22]
 Our decision is in accord with an earlier decision by a panel of this court, Phillippi v. Bechtel Assoc. Prof. Corp., 702 F.2d 1206 (D.C.Cir.1983), and with two unpublished memorandum opinions by district courts in this Circuit. Phillippi v. Bechtel Assoc. Prof. Corp., No. 81-1154 (D.D.C. April 28, 1982) and Jenkins v. Bechtel Assoc. Prof. Corp., No. 81-2236 (D.D.C. Feb. 23, 1982). The District of Columbia Court of Appeals has also recently repudiated the conflict-of-interest exception. Thomas Westbrook v. Hutchinson Crane Excavating Co., No. 82-1151 (D.C.App. June 30, 1983)