800 F.2d 1173
 255 U.S.App.D.C. 148
 Roy B. KEENER, et al., Appellants,
v.
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY.
Howard DENNIS, et al., Appellants,
v.
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY.
Stanley WILMES, et al., Appellants,
v.
BECHTEL CIVIL AND MINERALS, INC., et al.
Nos. 85-5029, 85-5122, 85-5123 and 84-5728, et al.
 United States Court of Appeals,
District of Columbia Circuit.
Argued Jan. 21, 1986.
Decided Sept. 2, 1986.
 
 Appeals from the United States District Court for the District of Columbia (D.C. Civil Action Nos. 81-0114, et al.).
 Peter Vangsnes and William F. Mulroney, with whom James M. Hanny and Michelle A. Parfitt, Washington, D.C., were on the briefs, for appellants.
 Walter A. Smith, Jr., with whom Vincent H. Cohen, Robert B. Cave, Susan M. Hoffman, and David F. Grady, Washington, D.C., were on the briefs, for appellee WMATA.
 David P. Durbin, with whom Edward J. Lopata, Washington, D.C., was on the joint brief, for appellees Morrison-Knudsen Co., Inc., in Nos. 85-5122 & 85-5123.
 Before MIKVA, BORK, and BUCKLEY, Circuit Judges.
 Opinion for the court filed by Circuit Judge BUCKLEY.
 BUCKLEY, Circuit Judge:
 
 
 1
 On the surface, these three related cases would seem to involve a reasonably straight-forward issue, namely, the scope of the immunity against tort actions granted contractors and subcontractors by the workmen's compensation laws applicable to the District of Columbia for injuries incurred before July 26, 1982. Unfortunately, its resolution requires the negotiation of a legal maze involving the interactions of two workmen's compensation statutes enacted by Congress, the repeal of one of them by the District of Columbia in the exercise of its home-rule authority, a Supreme Court decision interpreting the statute at issue in each of the cases before us, and subsequent congressional action designed to reverse the rule enunciated by the Court--all with an eye to the requirements of the federal general savings statute.
 
 
 2
 It is against this legal backdrop that the rights of the appellants (all of whom seek damages for injuries incurred in the construction of a new subway system) must be determined. For the reasons elaborated below, we conclude that the congressional action reversing the Supreme Court's rule did not affect the rights and obligations of the parties before us. As a consequence, the Court's ruling continues to control these cases, and we therefore affirm their dismissal by the district court.
 
 I. BACKGROUND
 A. Legal
 
 3
 As a first step towards an understanding of these cases, we believe it useful to provide a brief description of the legal context within which they must be decided.
 
 
 4
 In 1927, Congress enacted the Longshoremen's and Harbor Workers' Act, 33 U.S.C. Secs. 901 et seq. (1982) ("the Longshoremen's Act") in order to provide injured workers in U.S. maritime industries with workmen's compensation protection. The following year, acting in its capacity as the legislative authority for the District of Columbia, Congress provided employees in the District these same benefits by enacting the District of Columbia Workmen's Compensation Act of 1928, D.C.Code Secs. 36-501 et seq. (1973) ("the 1928 Act"). The statute did so through the simple device of adopting, by reference, the provisions of the Longshoremen's Act, "including all amendments that may hereafter be made thereto." Some fifty years later, after the District of Columbia had achieved home rule, the D.C. Council, in 1979, enacted a statute repealing the 1928 Act and bringing the District's workmen's compensation law into general conformity with that of the neighboring states of Maryland and Virginia. The new law became effective on July 26, 1982. District of Columbia Workers' Compensation Act of 1979, D.C.Code Secs. 36-501 et seq. (1981) ("the 1982 Act").
 
 
 5
 On June 26, 1984, in a case involving claims arising from injuries incurred before the 1982 Act became effective, the Supreme Court ruled that the defendant, as general contractor, was entitled to immunity against tort suits under section 905 of the Longshoremen's Act. WMATA v. Johnson, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984). Three months later President Reagan signed into law the Longshore and Harbor Workers' Compensation Act Amendments of 1984, Pub.L. No. 98-426, 98 Stat. 1639 ("the 1984 amendments"). These included changes in sections 904 and 905 that were designed to reverse the Supreme Court's holding in Johnson. The central issue in each of the cases on appeal is whether the 1984 amendments had any effect on the claims now before us, each of which had been dismissed by the district court pursuant to Johnson.
 
 
 6
 We conclude that as the repeal of the 1928 Act had the effect of severing the application of the Longshoremen's Act to the District of Columbia in 1982, the subsequent 1984 amendments were without effect on the law of the District. While the general savings statute, 1 U.S.C. Sec. 109 (1982), does serve to keep the 1928 Act alive, it does so for the sole purpose of preserving the provisions of the Longshoremen's Act, as they existed in 1982, for the benefit of employees whose claims are derived from injuries occurring before the 1982 Act became law. Thus the ruling in Johnson remains controlling. As we find no merit in the other points raised by appellants in the cases on appeal, we affirm their dismissal.
 
 B. Factual
 
 7
 Appellants in Keener v. WMATA, Dennis v. WMATA, and Wilmes v. Bechtel Civil and Minerals, Inc. all claim to have been injured while working on the construction of a rapid transit subway system for the Washington, D.C. metropolitan area. The construction of the subway is coordinated by the Washington Metropolitan Area Transit Authority ("WMATA"), an agency created by an interstate compact for the purpose of construing and operating the rapid transit system. In fulfillment of that purpose, WMATA hired subcontractors to work on the construction of the subway. Appellants were employees of these subcontractors or of sub-subcontractors who in turn had been hired by them.
 
 
 8
 In 1971, WMATA informed its subcontractors that it would secure workmen's compensation insurance for all construction employees working on the subway system and proceeded to purchase a workmen's compensation insurance policy (sometimes referred to as a "wrap up" policy) that covered all individuals working on the subway construction project regardless of who was their direct employer. This relieved subcontractors of any necessity to secure insurance for their own employees. At the same time, it enabled WMATA (as general contractor for the project) to protect itself against potential liability arising out of provisions of the Longshoremen's Act that were applicable to the District of Columbia by virtue of the 1928 Act. (At that time the Longshoremen's Act stated that general contractors "shall be liable for and shall secure the payment of compensation to employees of the subcontractor unless the subcontractor has secured such payment." 33 U.S.C. Sec. 904(a) (1982)). As a result of this arrangement, appellants' workmen's compensation claims were processed under WMATA's insurance policy.
 
 
 9
 In addition to seeking recovery under WMATA's insurance policy, appellants instituted third-party tort actions in the district court. Initially, many of these actions were brought against two subcontractors of WMATA, Bechtel Civil & Minerals, Inc., and Bechtel Associates Professional Corporation, D.C. The claims against the Bechtel subcontractors were dismissed, however, because they were deemed to be agents of WMATA, and section 80 of the WMATA Compact states that the sole remedy for the torts of WMATA's agents will be by suit against WMATA. See Johnson v. Bechtel Associates Professional Corp., 545 F.Supp. 783 (D.D.C.1982), modified, 717 F.2d 574 (D.C.Cir.1983), rev'd on other grounds sub nom. WMATA v. Johnson, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984).
 
 
 10
 WMATA in turn claimed immunity from tort liability under the Longshoremen's Act, which states that "the liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee." 33 U.S.C. Sec. 905(a)(1982).
 
 
 11
 In the cases now before this court in Wilmes v. Bechtel Civil and Minerals, Inc., WMATA argued that as it had secured the payment of the workmen's compensation benefits, it was entitled to immunity as if it were the "employer." The district court agreed and granted summary judgment for WMATA. The order granting summary judgment was appealed. In order to avoid a flood of similar appeals in the remaining cases now before this court in Keener v. WMATA and Dennis v. WMATA,[1] the district court stayed proceedings pending resolution of the first appeal.
 
 
 12
 The issue of WMATA's immunity was decided by the Supreme Court in WMATA v. Johnson, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984), reversing this court's holding in Johnson v. Bechtel Associates Professional Corp., 717 F.2d 574 (D.C.Cir.1983). The Supreme Court divided its analysis into two parts. First, the Court concluded that the immunity granted to employers under section 905 of the Longshoremen's Act can extend to general contractors. Second, the Court determined that a general contractor qualifies for section 905 immunity if it has not defaulted on its "statutory obligation to secure back-up compensation for subcontractor employees...." Johnson, 467 U.S. at 940, 104 S.Ct. at 2836. The Supreme Court rejected the argument that a general contractor was only entitled to immunity when it was forced into securing compensation because the subcontractor had failed to provide coverage. The Court reasoned that "[i]mmunity is not cast as a reward for employers that secure compensation; rather, loss of immunity is levied as a penalty on those that neglect to meet their statutory obligations." Id. at 937, 104 S.Ct. at 2834. Thus, so long as coverage was provided, the general contractor qualified for immunity.
 
 
 13
 On remand, this court entered a supplemental judgment ordering that "the judgment of the district courts on the issue of the immunity of WMATA under Sec. 905(a) of the Longshoremen's Act be ... affirmed." Johnson v. Bechtel, No. 82-2017 (D.C.Cir. Aug. 27, 1984) ("supplemental judgment").[2] A certified copy of the supplemental judgment was sent to the district court the same day. The district court entered final judgment for WMATA on September 21, 1984.
 
 
 14
 One week later the 1984 amendments to the Longshoremen's Act became law.[3] These amendments changed the statutory language upon which the Supreme Court had based WMATA's immunity with the purpose (as stated in the Joint Conference Report) of stripping Johnson of "any precedential effect" in pending as well as future cases. H.R.Rep. No. 98-1027, 98th Cong., 2d Sess. at 24 (1984). On October 12, 1984, the district court's September 21st final judgments were appealed on the ground that the 1984 amendments effectively removed WMATA's immunity. That appeal is now before us in Wilmes v. Bechtel Civil & Minerals, Inc.
 
 
 15
 While this court was dealing with the Supreme Court's remand in Johnson, the district court reactivated the cases that had been stayed pending the resolution of Johnson. In light of the Supreme Court's holding that WMATA had immunity, the district court issued an order to show cause why the pending cases should not be dismissed. While the parties were responding to the order to show cause, the 1984 amendments were signed into law.
 
 
 16
 Appellants in Keener responded in part to the order to show cause by arguing that the amendments applied to their cases and removed WMATA's immunity. Specifically, they argued that as the 1928 Act still controlled their cases and as the 1928 Act incorporates all subsequent amendments to the Longshoremen's Act, the 1984 amendments must apply to their cases. The district court disagreed, holding that the 1982 Act "expressly repealed the 1928 Act, with the result that the 1928 Act was no longer in existence on September 28, 1984, when the 1984 amendments became effective." In re: Metro Subway Accident Referral, 630 F.Supp. 385, 390 (D.D.C.1984). While the district court recognized that the 1928 Act still governed pre-July 26, 1982 accidents, it viewed the 1928 Act as in the legal equivalent of a state of suspended animation, as of the date of repeal, for the sole purpose of preserving the rights of those injured prior thereto. After concluding that the amendments did not apply to the District of Columbia and that Johnson still controlled, the district court dismissed the cases. The appeal of those dismissals is before us in Keener v. WMATA.
 
 II. DISCUSSION
 A. Repeal of the 1982 Act
 
 17
 The issue of the applicability of the 1984 amendments to District of Columbia workmen's compensation cases is a question of local law. That question has been squarely addressed and conclusively decided by the District of Columbia's highest court. After a careful review of the relevant statutes and precedents, the District of Columbia Court of Appeals concluded:
 
 
 18
 As a result of the Council action repealing the District of Columbia 1928 Act, that act had ceased to exist by 1984, when Congress amended the Longshore Act. Had it not been for the repealer, the 1928 Act would indeed have incorporated those amendments, including the revisions of Section 33 which would have benefitted appellant's cause. But as the 1928 Act was no longer on the books, what Congress subsequently did to the Longshore statute did not affect any rights created by such prior law.
 
 
 19
 O'Connell v. Maryland Steel Erectors, Inc., 495 A.2d 1134, 1142 (D.C.App.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986). As we have recently held, the District of Columbia Court of Appeals is entitled to deference on matters of local law. Hall v. C & P Telephone Co., 793 F.2d 1354 (D.C.Cir.1986) (because the 1928 Act is a "local" law, "we find that deference to the District of Columbia Court of Appeals was in order"), 793 F.2d at 1358; Norwood v. Marrocco, 780 F.2d 110 (D.C.Cir.1986) ("deferring to a well-reasoned, carefully researched opinion on local law is both appropriate and in keeping with the Congressional purpose reorganizing the judiciary of the District of Columbia").[4] Id. at 113.
 
 
 20
 Appellants contend, however, that the applicability of the 1984 amendments is not simply a matter of local law; and therefore, this court should not defer to the D.C. Court of Appeals on this matter. Specifically, appellants note that District of Columbia workmen's compensation claims for pre-July 26, 1982 injuries continue to be handled by a federal agency, the Department of Labor, and judicial review of how the claims are handled remains in the federal courts. Further, appellants argue that the Longshoremen's Act is a federal statute, and the federal courts should make the final determination of where and how the Act applies. We find appellants' reasoning unpersuasive.
 
 
 21
 The issue before us affects only District of Columbia workmen's compensation claims. The resolution of the issue depends on what the D.C. Council intended when it passed the 1982 Act. Appellants claim that the Council's purpose was to replace the Longshoremen's Act only with respect to injuries incurred after the adoption of the 1982 Act. Therefore, appellants contend, the 1928 Act remains in full effect for the purpose of defining liability for injuries incurred before July 24, 1982, including the clause incorporating future amendments to the Longshoremen's Act. The D.C. Court of Appeals has ruled otherwise. "In adopting the new act the Council divorced the local worker's compensation system entirely from the Longshoremen's Act of 1927." O'Connell, 495 A.2d at 1141.
 
 B. The 1984 Amendments
 
 22
 Appellants argue, nevertheless, that whatever the D.C. Council may have intended when it adopted the 1982 Act, it has been overridden by congressional action in 1984; and they cite the Joint Conference Committee Report in support of the proposition that Congress intended to reverse not only the principle enunciated in Johnson, but its application to this litigation as well. Whatever the members of the Conference may have intended, however, this is not what they accomplished because the 1928 Act was no longer in existence to extend the reach of the 1984 amendments beyond the Longshoremen's Act itself. Absent explicit statutory language, we decline to accept the argument that expressions of intent in the Conference Report are sufficient to reinstate a law that the D.C. Council repealed in a valid exercise of its powers under the District of Columbia Self-Government Act of 1973, D.C.Code Secs. 1-201 et seq. (1981), and as to which Congress declined to exercise its reserved right of veto. See O'Connell, 495 A.2d at 1141; In re Metro, 630 F.Supp. at 388.
 
 
 23
 We find it irrelevant that the Department of Labor has reached a contrary conclusion. See 51 Fed.Reg. 4270 (Feb. 3, 1986). We have before us not a question of interpreting how the 1984 amendments are to be applied to claims for injuries incurred prior to the 1928 Act's repeal, but of determining whether they have any application to those claims whatever. Whereas the former question would enlist the Department's expertise with respect to a matter within its statutory responsibility, the latter involves a pure question of law whose interpretation lies within the exclusive province of the courts.
 
 C. The General Savings Statute
 
 24
 Nor can we agree with appellants' contention that the general savings statute, 1 U.S.C. Sec. 109 (1982), requires a different conclusion in this case. In pertinent part, the statute provides:
 
 
 25
 The repeal of any statute shall not have the effect to release any penalty, forfeiture, or liability incurred under such statute ... and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.
 
 
 26
 Thus, the repeal of the 1928 Act did not result in a forfeiture of the remedies available at the time of repeal for injuries incurred prior to repeal, and no more. D.C. workmen's compensation claimants seeking damages for pre-July 26, 1982 injuries are entitled to the rights and benefits afforded by the 1928 Act as they then existed, and not as they might be modified by subsequent amendment. O'Connell, 495 A.2d at 1141-42; see De La Rama Steamship Co. v. United States, 344 U.S. 386, 389-91, 73 S.Ct. 381, 383-84, 97 L.Ed. 422 (1953).
 
 D. WMATA as General Contractor
 
 27
 Appellants next contend that even if the 1984 amendments do not apply, WMATA is not entitled to immunity because WMATA is not a general contractor. Appellants argue that WMATA must be viewed as a public owner which has contracted for the construction of the subway with prime contractors who in turn have hired subcontractors. Appellants then conclude that as WMATA is only an owner, and as the Longshoremen's Act does not extend immunity to owners, WMATA is not entitled to immunity.
 
 
 28
 WMATA's status is a question of fact and law. See Director, Office of Workers' Compensation Programs v. National Van Lines, Inc., 613 F.2d 972, 987 (D.C.Cir.1979), cert. denied, 448 U.S. 907, 100 S.Ct. 3049, 65 L.Ed.2d 1136 (1980). The district court fully reviewed the nature of WMATA's responsibilities for the planning and supervision of the subway construction project. On the basis of its findings of fact, the court concluded, as a matter of law, that WMATA's supervisory duties were those of a general contractor.
 
 
 29
 We affirmed that conclusion in Johnson v. Bechtel Associates Professional Corp., 717 F.2d 574, as did the Supreme Court in Johnson, where it stated:
 
 
 30
 Whether WMATA serves as the general contractor for the entire Metro construction project turns on a factual inquiry into WMATA's responsibility for supervising project construction. Because the lower court's findings have ample support in the record ... we accept their conclusion that WMATA is a general contractor for purposes of Sec. 4(a) of the LHWCA.
 
 
 31
 467 U.S. at 928 n. 5, 104 S.Ct. at 2830 n. 5 (citations omitted).
 
 
 32
 Appellants in Keener nevertheless contend that Johnson is not controlling because the Supreme Court's decision turned on a factual finding, and a factual finding in one case cannot be binding on a different party in another case. Collateral estoppel, they argue, can only be used against a party who was involved in the prior litigation and who had an opportunity to litigate the issue in question. See McCord v. Bailey, 636 F.2d 606, 608-09 (D.C.Cir.1980),cert. denied, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981). As appellants concede, however, "there are no material facts in dispute" in this case (Appellants' Brief at 37, Keener v. WMATA ); and these undisputed facts, as they concern WMATA's responsibility for supervising project construction, are the same ones on the basis of which the Supreme Court concluded, in Johnson, that WMATA is a general contractor for purposes of determining its entitlement to Longshoremen's Act immunity. Thus, as a matter of law, we are required by Johnson to find that WMATA is a general contractor.
 
 E. Liability Under WMATA Compact
 
 33
 Appellants' next contention is that even if WMATA were a general contractor entitled to immunity under the Longshoremen's Act, that immunity does not extend to WMATA's liability for actions arising under section 80 of the WMATA Compact.[5] That section provides, in relevant part, that
 
 
 34
 The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees and agents committed in the conduct of any proprietary function.... The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority.
 
 
 35
 Appellants contend that WMATA's immunity under the Longshoremen's Act should not be given so broad a scope as to protect WMATA from its statutory liability under section 80. This same argument was made before the Supreme Court in Johnson. Although the Court did not specifically address the issue, it did state that "WMATA was entitled to immunity from the tort actions brought by respondents." Johnson, 467 U.S. at 940, 104 S.Ct. at 2836. As the section 80 issue had been fully argued in the briefs before it, we conclude that the Supreme Court found WMATA to be entitled to immunity despite appellants' appeal to section 80.
 
 
 36
 This conclusion, moreover, is fully consistent with the Court's summation of the central purpose of workmen's compensation laws:
 
 
 37
 On both sides there is a quid pro quo. In return for the guarantee of compensation, the employees surrender common-law remedies against their employers for work-related injuries. For the employer, the reward for securing compensation is immunity from employee tort suits.
 
 
 38
 Johnson, 467 U.S. at 931, 104 S.Ct. at 231. The language of the Longshoremen's Act accomplishes this purpose by stating that the employer's obligation to secure compensation is "exclusive and in place of all other liability of such employer to the employee ... on account of such injury or death...." 33 U.S.C. Sec. 905(a). This objective would be frustrated if WMATA were not granted immunity from liability for its agents' torts.
 
 F. Immunity of Intermediate Subcontractors
 
 39
 The second case before us, Dennis v. WMATA, involves suits brought by employees of sub-subcontractors against WMATA and intermediate subcontractors positioned in the contractual chain between WMATA and the injured workers' employers. In addition to raising the issues discussed above, appellants challenge the district court's conclusion that Johnson requires the extension of immunity to intermediate subcontractors as well as to the general contractor on the one hand, and a claimant's immediate employer on the other. In re: Metro Subway Accident Referral, 630 F.Supp. 385 (D.D.C.1984).
 
 
 40
 Appellants advance the novel theory that because WMATA has been granted immunity as a result of "its contingent liability to all employees on the entire project," and because "any injured employee may claim compensation benefits directly" from WMATA, "if an intermediate employer has failed to 'secure' the payment of compensation pursuant to Section 932(a) of the Act," it must follow that those intermediates are not subject to the contingent liability under section 904(a) that is required to qualify for immunity under section 905(a) (Brief for Appellants at 38 (emphasis in original), Dennis v. WMATA ).
 
 
 41
 This theory flies in the face of the Supreme Court's holding that under the Longshoremen's Act, employers enjoy immunity until such time as it is forfeited through their failure to meet their statutory obligation to their employees. Johnson, 467 U.S. at 938, 104 S.Ct. at 2835. In fact, appellants concede that the Johnson holding "is predicated on the Court's conclusion that the general contractor's contingent liability under ... Section 904(a) extends to the employers of subcontractors at all tiers." (Brief for Appellants at 37, Dennis v. WMATA ). Nevertheless they ask us, in effect, to ignore the Court's position because, they claim, it is at variance with the prevailing rule. This we decline to do, and not merely because of the impropriety of the suggestion. What appellants describe as the Supreme Court's "extraordinary pronouncement," id., does no more than give expression to the common sense of the matter. Complex construction projects entail chains of contractors, subcontractors, and sub-subcontractors. A statutory scheme that would grant immunity only to the first and last links in the chain, while subjecting all the intermediaries to common law tort liability, would make no sense whatever. Each employer in the chain is subject to contingent liability under section 904(a), and each has a stake in the accommodation between employee compensation and employer liability that lies at the heart of the Longshoremen's Act. In short, we can find nothing in law or logic to support the appellants' thesis, and decline to do so.
 
 G. Finality of Judgment in Wilmes
 
 42
 The third case before us, Wilmes v. Bechtel Civil and Minerals, Inc., is an appeal from judgments entered by the district court following the Supreme Court's remand in Johnson. Appellees oppose the appeal on jurisdictional grounds arguing, inter alia, that the judgments of the district court were final and not open to appeal. We decline to resolve the jurisdictional issues because even if appeal were to proceed, our holdings in Keener and Dennis would require that we affirm Wilmes on the merits. See Murray v. Buchanan, 720 F.2d 689, 690 (D.C.Cir.1983) (en banc) (court declined to proceed with the review of a jurisdictional question after the Supreme Court had issued an opinion that settled the substantive issues in the case).
 
 III. CONCLUSION
 
 43
 As we conclude that the 1984 amendments do not reach the 1928 Act, the Johnson decision continues to control in all these cases. The district court's decisions dismissing these actions are therefore
 
 
 44
 Affirmed.
 
 
 
 [1]
 While the issues in Keener and Dennis are virtually identical, appellants in Dennis have been allowed to bring a separate appeal based on one issue that distinguishes their case from Keener. That issue is discussed later in this opinion
 
 
 [2]
 On September 26, 1984, appellants in Wilmes filed with this court a petition for rehearing of the August 27 supplemental judgment. A ruling denying the petition for rehearing is being issued simultaneously with this opinion
 
 
 [3]
 As a result, the pertinent language of sections 904 and 905 has been changed to read as follows: "A subcontractor shall not be deemed to have failed to secure the payment of compensation if the contractor has provided insurance for such compensation for the benefit of the subcontractor." 33 U.S.C. Sec. 904(a) (Supp.1985). "For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 4." Id. Sec. 905(a)
 
 
 [4]
 The District of Columbia Court Reform and Criminal Procedure Act of 1970, PUB.L. NO. 91-358, 84 Stat. 473
 
 
 [5]
 Washington Metropolitan Area Transit Authority Interstate Compact, PUB.L. NO. 89-774, 80 Stat. 1324; D.C.Code Sec. 1-2431 (1981)