**RAILCO MULTI–CONSTRUCTION CO. and Lumbermen Mutual Casualty Co., Petitioners,**

v.

**Robert GARDNER and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 88–489.

District of Columbia Court of Appeals.

Argued May 4, 1989.
Decided Oct. 5, 1989.

David P. Durbin, with whom Edward J. Lopata and D. Stephenson Schwinn, Washington, D.C., were on the brief, for petitioners.

Kevin B. Byrd, Washington, D.C., for respondent Gardner.

Joshua T. Gillelan II, Atty., U.S. Dept. of Labor, Office of the Solicitor, Washington, D.C., with whom George R. Salem, Sol. of Labor, Donald S. Shire, Associate Sol., and J. Michael O'Neill, Washington, D.C., were on the brief, for respondent Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor.

Before ROGERS, Chief Judge, and NEWMAN and TERRY, Associate Judges.

ROGERS, Chief Judge:

In this certified appeal[1] we are asked to decide whether the District of Columbia Workers' Compensation Act of 1979, D.C. Code § 36–301 et seq. (1988 Repl.) (the 1979 Act), covers a worker's injury or disease if the employment events giving rise to the injury occurred before the 1979 Act took effect, but the worker did not become aware of the injury and its job-relatedness until after that time. We hold that the 1979 Act applies unless there is no subject matter jurisdiction of a claim under that Act or other state law, in which event, to avoid depriving an injured worker of any workers' compensation coverage, the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–50 (1982) (LHWCA), as extended by Congress to District of Columbia private sector workers in 1928, D.C. Code § 36–501 et seq. (1973) (the 1928 Act), will apply.

I

The relevant facts are not in dispute.[2] Respondent Robert Gardner worked for nine years as a construction worker on the Washington Metropolitan Area Transit Authority's subway project. His last employer was Railco Multi–Construction Company (Railco), a District of Columbia employer for whom he worked from September 1981 until September 15, 1982, when the project was completed. Until June 1982 he worked for Railco at the L'Enfant Plaza station in the District of Columbia. Thereafter, from June to September 1982, he worked in Virginia.

In January 1983 Gardner filed a claim for worker compensation benefits under the 1928 Act. He alleged that as a result of his exposure to noisy machinery while employed by Railco in the District of Columbia and in Virginia, he had suffered a hearing loss.[3] An administrative law judge found that Gardner first became aware of his hearing loss on September 16, 1982. Acknowledging that the District's new workers' compensation act, the 1979 Act, had taken effect,[4] the administrative law judge ruled that Gardner's injury was covered by the 1928 Act because "[a]lmost all of this injury really occurred prior to" the

---

1. On May 3, 1988, the United States Court of Appeals for the District of Columbia Circuit certified this question of law to this court pursuant to D.C.Code § 11–723 (1988 Supp.).

2. See Penn Mut. Life Ins. Co. v. Abramson, 530 A.2d 1202, 1207–08 (D.C.1987) (when addressing certified question, can draw from entire record); accord Edwards v. Mutual of Omaha Ins. Co., 530 A.2d 1190, 1191 (D.C.1987).

3. All the parties agree that Gardner's hearing loss is an occupational disease. See Travelers Ins. Co. v. Cardillo, 225 F.2d 137 (2nd Cir.), cert. denied, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955) (hearing loss determined to be occupational disease).

4. In its certification, the United States Court of Appeals for the District of Columbia Circuit noted some confusion over when the 1979 Act became effective. As the United States Court of Appeals observed, the issue is not material to this appeal. July 26, 1982, is the date used in the regulations adopted under the Act. See Code of D.C.Reg. § 3602.1, 29 D.C.Reg. 5540 (1982). See also Keener v. Washington Metro. Area Transit Auth., 255 U.S.App.D.C. 148, 150, 800 F.2d 1173, 1175 (D.C.1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). July 24, 1982, however, is the date noted in the District of Columbia Code commentary on § 36–345 establishing the effective date of the 1979 Act, D.C.Code § 36–345 (1988 Repl.), and in cases decided by this court. See, e.g., Estep v. Construction Gen., Inc., 546 A.2d 376, 378 (D.C. 1988); Lee v. District of Columbia Dep't of Employment Servs., 509 A.2d 100, 103 (D.C.1986); O'Connell v. Maryland Steel Erectors, Inc., 495 A.2d 1134, 1140 (D.C.1985), cert. denied, 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986).

effective date of the District's Act.[5] Petitioners Railco and its insurance carrier, Lumbermens Mutual Casualty Company,[6] appealed to the Benefits Review Board (the Board), which affirmed the decision of the administrative law judge on different grounds, relying in part on the 1984 amendments to the LHWCA. *Gardner v. Railco Multi–Construction Co.*, 18 BRBS 264 (1986) (*Gardner I*). On remand from the United States Court of Appeals for the District of Columbia Circuit for reconsideration in light of *Keener v. Washington Metro. Area Transit Auth., supra,* 255 U.S.App.D.C. 148, 800 F.2d 1173, the Board reaffirmed its decision on the coverage issue. *Gardner v. Railco Multi–Construction Co.*, 19 BRBS 238 (1987) (*Gardner II*).[7] Railco then appealed to the United States Court of Appeals for the District of Columbia Circuit. Following briefing and oral argument, the court certified the question of law to this Court.

## II

Before us is a question of law regarding legislative intent and we apply the usual standard of review. *See Thomas v. District of Columbia Dep't of Employment Servs.,* 547 A.2d 1034, 1037–38 (D.C.1988). Accordingly, to determine which statute applies to a claim, we review the language of the statutes and their legislative histories in light of the purposes of the workers' compensation statutory scheme. *Id.* Such a question involves considerations generally not invoking the reasons for which courts will defer to agency expertise. *Keener, supra,* 255 U.S.App.D.C. at 154, 800 F.2d at 1179 (whether amended statute applies to a claim); *O'Connell, supra,* 495 A.2d at 1141 9 (jurisdiction of court); *Castorina v. Lykes Bros. S.S.,* 578 F.Supp.

1153, 1159 n. 3 (S.D.Tex.1984) (agency's interpretation on question of law given significant consideration but not binding), *aff'd,* 758 F.2d 1025 (5th Cir.), *cert. denied,* 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985); *Petrou Fisheries, Inc. v. I.C.C.,* 727 F.2d 542, 545 (5th Cir.1984) (issues of pure statutory construction not within agency's field of technical expertise to which court necessarily owes deference). We also are guided by the well-established principle in this jurisdiction that workers' compensation statutes are to be liberally construed for the benefit of the employee in accordance with the humanitarian nature of the statutes generally. *See Meiggs v. Associated Builders, Inc.,* 545 A.2d 631, 637 (D.C. 1988), *cert. denied,* — U.S. —, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989); *Ferreira v. District of Columbia Dep't of Employment Servs.,* 531 A.2d 651, 655 (D.C.1987), citing decisions of the United States Court of Appeals for the District of Columbia Circuit; *see also Dunston v. District of Columbia Dep't of Employment Servs.,* 509 A.2d 109, 111 (D.C.1986) (citing *Wheatley v. Adler,* 132 U.S.App.D.C. 177, 183, 407 F.2d 307, 313 (1968) (en banc)).

The United States Court of Appeals posed the issue of how to define the relevant "date of injury" in long-latency occupational diseases for purposes of determining whether the 1979 or the 1928 Act provides coverage, and identified it as a question of local and not federal law. Unlike an accidental injury, in which the trauma effects are felt almost immediately, it is unclear in long-latency diseases whether the injury occurs when the employee is exposed to the employment event (time of last exposure theory) or when the disease actually manifests itself (the date of man-

---

5. The finding was that Gardner's hearing loss actually occurred continually over a period of nine years, ending September 16, 1982.

6. For ease of reference we refer to petitioners, who filed a joint brief, as Railco.

7. In view of *Keener, supra,* holding that the 1984 amendments to the LHWCA did not apply to the 1928 Act in effect for District of Columbia workers pursuant to the federal savings clause, the Board found, however, that Gardner had failed

to file a timely claim under the unamended 1928 Act. *Gardner II, supra,* 19 BRBS 242. Gardner was still entitled to receive medical expenses and attorney's fees, the provisions for which differ in the 1928 Act, *compare* 33 U.S.C. §§ 903, 928 (1982), *with* D.C.Code §§ 36–307, –330 (1988 Repl.). Thus, the determination of which workers' compensation statute covers Gardner's injury affects the level of his recovery even though disability compensation is no longer available to him.

ifestation theory). *See generally Castorina v. Lykes Bros. S.S., supra,* 758 F.2d at 1029–30. The court suggested that if the manifestation rule is adopted, then the injury occurred when Gardner first became aware of his hearing loss on September 16, 1982, and the 1979 Act applies; if the exposure rule is adopted, then the injury occurred prior to 1979 and the 1928 Act applies, pursuant to the general savings statute. The court noted, however, that this court is free to adopt some other alternative, including the one we adopt today.[8]

Railco contends that the express and complete repeal of the 1928 Act precludes its application to an occupational disease arising thereafter, regardless of when exposure occurred, and that the 1979 Act suffices to provide coverage for Gardner so long as the injury is manifested after the effective date of the 1979 Act; the matter of where Gardner worked while covered by the 1979 Act, Railco claims, is a compensation issue which should not determine whether the 1979 or 1928 Act applies. Railco also asserts that the general savings clause does not provide Gardner coverage under the 1928 Act because Gardner's exposure alone did not give rise to a proper claim.

Respondents Gardner and the Office of Workers' Compensation Programs of the United States Department of Labor (OWCP) contend that the relevant employment events determine coverage, and that here substantially all the employment events occurred prior to the 1979 Act, giving rise to coverage under the 1928 Act.

They point out that Gardner, who worked in Virginia from June to September 1982, may be without coverage under the 1979 Act because of its geographic limitations on coverage, *see* D.C.Code § 36–303(a) (1988 Repl.), and contend that even if Gardner's rights under the 1928 Act were inchoate as of the effective date of the 1979 Act, Railco's liability arose, and must be recognized, under the 1928 Act, particularly where the claimant may be provided no substitute coverage by the 1979 Act.[9] Respondents also refer to a regulation promulgated by the Secretary of Labor providing that the 1928 Act "applies to all claims for injuries or deaths based on employment events that occurred prior to [the effective date of the 1979 Act]," 51 Fed.Reg. 4281, 20 C.F.R. § 701.101(b) (1987), which they claim reflects "the fundamental nature and operation of the LHWCA and the 1928 Act."[10]

### A.

In 1928 Congress extended the provisions of the LHWCA to District of Columbia private sector employees and provided that the local act would be administered by the United States Department of Labor with review of departmental administrative decisions by the United States Court of Appeals for the District of Columbia Circuit. D.C.Code §§ 36–501, –502 (1973); *see District of Columbia v. Greater Washington Cent. Labor Council,* 442 A.2d 110, 112, 116 (D.C.1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983). Following the enactment by Congress of

**8.** The certification stated that this court, for example, could decide that the 1928 Act should cover an employee whose injury was contracted before but manifested after the 1979 Act took effect, if after that time, but before manifestation, the employee had either stopped working or shifted to employment for which no remedy was available under the 1979 Act, if, for instance, subject matter jurisdiction was lacking, and no other workers' compensation remedy was available. The certification memorandum noted that in Gardner's case it is unclear whether another remedy is available under a law other than the 1928 and 1979 Acts. Another alternative mentioned in the certification was that this court could decide that the 1928 Act covers an employee whose work for the same employer straddled the time period before and after the 1979 Act's effective date, but whose disease did not manifest itself until after that date, either if the 1979 Act failed to provide a remedy, or if neither that Act nor any other workers' compensation law supplied one.

**9.** *See* D.C.Code § 36–303(a) (1988 Repl.). The U.S. Department of Labor refers us to hundreds of similar cases pending in its office involving claimants whose exposure and manifestation of injury span the coverage dates of the 1928 and 1979 Acts.

**10.** The Board relied on the regulation in finding coverage under the 1928 Act. *See Gardner I, supra,* 18 BRBS 268.

the District of Columbia Self Government and Governmental Reorganization Act in 1973,[11] the Council of the District of Columbia enacted the 1979 Act. *See* D.C.Code § 36–301 *et seq.* (1988 Repl.). The 1979 Act, designed to enable the District of Columbia to be competitive with Maryland and Virginia in attracting and retaining business, narrowed the scope of coverage [12] and lowered the level of benefits available to injured workers. *See Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567 (D.C.1985); *O'Connell, supra*, 495 A.2d at 1141. In many other respects, however, it retained provisions of the 1928 Act.[13] The 1979 Act is administered by the District of Columbia Department of Employment Services (DOES) and provides for appeals from the agency's decisions to this court.[14] It took effect after its validity was upheld by this court. *See O'Connell, supra*, 495 A.2d at 1141 & n. 14 (citing *District of Columbia v. Greater Washington, supra*, 442 A.2d 110).

The 1979 Act repealed the 1928 Act.[15] However, under the general savings statute of the United States Code, the 1928 Act continues in effect as it existed in 1982, the effective date of the repeal of the 1928 Act, and without regard to subsequent amendments to the federal LHWCA, for the purpose of "sustaining any proper action or prosecution for the enforcement of [any] penalty, forfeiture or liability ... incurred under such statute." 1 U.S.C. § 109 (1982);[16] *see Keener, supra*, 255 U.S.App. D.C. at 154, 800 F.2d at 1175 (citing *O'Connell, supra*, 495 A.2d at 1141–42); *see also Estep, supra*, 546 A.2d at 378.

### B.

The 1979 Act provides, in relevant part, that "[t]his chapter shall apply in respect to the injury or death of an employee of an employer.... provided that at the time of such injury or death this employment is principally localized in the District of Columbia...." D.C.Code § 36–303(a) (1988 Repl.). The definition of injury, in pertinent part, is an:

> accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury....

D.C.Code § 36–301(12) (1988 Repl.). The 1979 Act provides that liability for compensation for any generally recognized occupational disease "rests with the employer of last known exposure," D.C.Code § 36–310

---

**11.** Pub.L. 93–198, 87 Stat. 774, 1 D.C.Code 201 *et seq.* (1987 Repl.).

**12.** The 1928 Act extended compensation coverage to an employee of an employer "carrying on any employment in the District of Columbia" without regard to where the employee worked or was injured. *See* D.C.Code § 36–501 (1973). The Supreme Court construed the LHWCA as giving the widest extraterritorial application coverage possible consistent with the Due Process Clause of the Constitution. *See Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 476, 67 S.Ct. 801, 805–06, 91 L.Ed. 1028 (1947); *see also Director, Office of Workers' Compensation Programs v. National Van Lines, Inc.*, 198 U.S.App. D.C. 239, 246, 613 F.2d 972, 979 (1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3049, 65 L.Ed.2d 1136 (1980). The 1979 Act provides for compensation only if, at the time of injury or death, the worker's employment "is principally localized in the District of Columbia." D.C.Code § 36–303(a) (1988 Repl.). See note [22], *infra*.

**13.** *See Grillo v. Nat'l Bank of Washington*, 540 A.2d 743, 749 n. 15 (D.C.1988); Report of the Committee on Public Services and Consumer Affairs, Council of the District of Columbia, on

Bill 3–106, District of Columbia Workers' Compensation Act of 1979, January 16, 1980, at 8–19; Report of the Committee on Housing and Community Development, Council of the District of Columbia, on Bill 3–106, January 29, 1980. (Legislative History, Rpt. of PS & CA Cte. and Rpt. of H & CD Cte.).

**14.** *See* D.C.Code §§ 36–302(a), –320, –322; *O'Connell, supra*, 495 A.2d at 1141.

**15.** Section 46 of the 1979 Act repealed the 1928 Act. This section is not codified, but was published as part of the 1979 Act in the District of Columbia Register at 27 D.C.Reg. 2541 (1980).

**16.** 1 U.S.Code § 109 (1982) provides:

The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

(1988 Repl.), and adopts a "discovery rule" for the time of filing a claim for compensation, stating that such time does not begin to run "until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment." D.C.Code § 36–314(a) (1988 Repl.).

Although neither these nor any other provision of the 1979 Act specifies when the "time of injury" occurs where an employee does not become aware of an occupational disease until long after the injurious exposure, and the legislative history does not refer to a decision by the D.C. Council to adopt the manifestation rule, we conclude that adoption of this rule is most consistent with the intent of the D.C. Council.[17] In defining the time of the discovery of the injury under D.C.Code § 36–314(a) as the relevant point for determining when an employee has a claim for compensation, the D.C. Council did not change the language that was in the 1928 Act, as amended in 1972. The 1979 Act is modelled on the LHWCA in other respects as well, *see Grillo, supra*, 540 A.2d at 749 n. 15, and thus, decisions under the 1928 Act and LHWCA are instructive. *See Meiggs v. Associated Builders, Inc., supra*, 545 A.2d at 635 (in adopting statute modelled after statute in another jurisdiction, legislature deemed to have adopted judicial construction as well); *Dunston, supra*, 509 A.2d at 111 n. 2; *United States v. Brown*, 422 A.2d

1281, 1284 (D.C.1980) (Congress presumed to be aware of preexisting statutes).

Under the LHWCA the courts held that the time of injury for purposes of determining the date when the statute of limitations begins to run is the time of manifestation of a disease or injury. *Sun Shipbuilding & Dry Dock Co. v. Bowman*, 507 F.2d 146, 150 (3d. Cir.1975); *Travelers Ins. Co. v. Cardillo*, 225 F.2d 137, 142–43 (2d Cir.), *cert. denied*, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955). The rule also was adopted for determining the amount of compensation to which the injured occupational disease claimant is entitled. *See, e.g., Todd Shipyards Corp. v. Black*, 717 F.2d 1280, 1291 (9th Cir.1983), *cert. denied*, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). As explained by the Ninth Circuit Court of Appeals, the manifestation rule best accomplishes the purposes of the LHWCA in compensating employees for the loss of wage earning capacity resulting from occupational injury or disease since the statute "necessarily focuses on *future* earning capacity rather than on some past period of employment," and "is far more likely to insure that injury workers will be fairly compensated for their lost future earning capacity." *Todd Shipyards, supra*, 717 F.2d at 1289 (emphasis in original).[18]

Recently, a federal court adopted the manifestation rule for choosing between two versions of the LHWCA. In *Castori-*

---

**17.** There is nothing to suggest that the D.C. Council intended to afford an injured worker the *option* of discretionarily seeking compensation under either the 1928 or the 1979 Act. Congress, by permitting the 1979 Act to become effective, has, in effect, enacted the 1979 Act as a replacement for the 1928 Act for most purposes. *See* D.C.Code § 1–206, –207 (1987 Repl.). *Cf. Harmon v. Baltimore & Ohio Railroad*, 239 U.S.App.D.C. 239, 246, 741 F.2d 1398, 1405 (1984) (no concurrent recovery under two federal statutes, LHWCA and Federal Employer's Liability Act); *Lee v. District of Columbia Dep't of Employment Services*, 509 A.2d 100 (D.C. 1986) (upholding agency determination that recovery of benefits in another jurisdiction precludes recovery under 1979 Act). Both the 1928 and 1979 Acts provide a credit for compensation awards received under another state's workers' compensation law for the same injury, thereby preventing double recovery. *See* 33 U.S.C.

§ 903(e) (1986); D.C.Code § 36–303(a)(1) (1988 Repl.).

**18.** The court in *Todd Shipyards* noted that the Board had applied the manifestation rule for determining compensation levels until its 1981 decision in *Dunn v. Todd Shipyards Corp.*, 13 BRBS 647 (1981), which in the view of the Ninth Circuit was "ill considered and contrary to the express purposes of the LHWCA," since the exposure rule it adopted presented the difficult task of determining the exact date on which harmful exposure occurred, coverage is not dependent on manifestation during employment but rather when the worker becomes aware of the injury, the statute can be construed to cover retired employees, and there is no reason to place the burden of inadequate insurance based on lower levels of compensation on the employee. *Id.* at 1289, 1291–92.

*na v. Lykes Bros. Steamship, supra,* 758 F.2d 1025, the court held that, even though the claimant was exposed to asbestos between 1965 and 1972, the LHWCA as amended in 1972 applied to the claimant's injury, which was diagnosed in 1979. In concluding, for purposes of determining which statute to. apply, that the date of injury "is most realistically defined as the date that the disease actually manifests itself," *id.* at 1031, the court relied on Judge Learned Hand's observation in (*Grain Handling Co. v. Sweeney,* 102 F.2d 464, 466 (2d Cir.), *cert. denied,* 308 U.S. 570, 60 S.Ct. 83, 84 L.Ed. 478 (1939)), that the LHWCA "is not concerned with pathology, but with industrial disability; and a disease is no disease until it manifests itself."[19] As the court noted, mere exposure to injurious elements does not necessarily mean that the employee will contract an occupational disease. *See Castorina, supra,* 758 F.2d at 1031.

The trend toward applying the manifestation rule in a number of contexts, includ-

ing coverage, is also evident in state workers' compensation decisions. Professor Larson reports:

> In contrast with accidental injury cases, in which there are usually two or more distinct "injuries," occupational disease cases typically involve long periods of exposure during which the disease is latent or even asymptomatic. In the search for an identifiable instant in time which can be used to determine when the "injury" occurred for purposes of determining which year's statute to apply, and who is the last employer for purposes of the last injurious exposure rule, the date of disability [i.e. the date of manifestation] is frequently chosen.

4 LARSON'S WORKMEN'S COMPENSATION LAW § 95.25(a), at 17–149–50 and cases cited therein.[20]

### C.

Adoption of the manifestation rule, which means that the 1979 Act would apply in long-latency cases, could work unintend-

**19.** The 1984 amendments to the LHWCA, Pub.L. No. 98–426, 98 Stat. 1639 (1984), codified the manifestation rule for determining time of injury. *See* 33 U.S.C.A. § 901 (1986) [historical note], Section 28(g), Pub.L. 98–426. These amendments cannot be read into the 1928 Act. *See Keener, supra,* 255 U.S.App.D.C. at 154, 800 F.2d at 1179; *Estep, supra,* 546 A.2d at 378 n. 2; *O'Connell, supra,* 495 A.2d at 1142.

**20.** *See, e.g., Mergenthaler v. Asbestos Corp. of America,* 534 A.2d 272 (Del.Super.Ct.1987) (manifestations after amendment to workers' compensation law providing, for first time, compensation for asbestos-related diseases, covered by amended law); *Wood v. J.P. Stevens & Co.,* 297 N.C. 636, 256 S.E.2d 692 (1979) (amended statute applies to all claims in which disability manifested after effective date of statute); *Tucker v. Claimants in Death of Gonzales,* 37 Colo.App. 252, 546 P.2d 1271 (1976) (legislative intent that amended statute controls rights and liabilities of worker and employer, which accrue at time of disability); *Frisbie v. Sunshine Mining Co.,* 93 Idaho 169, 457 P.2d 408 (1969) (amended statute applies since right to compensation does not accrue and rights of parties do not become fixed until time of disability).

A case holding to the contrary, *Johnson v. State Accident Ins. Fund Corp.,* 78 Or.App. 143, 714 P.2d 1098 (1986), *review denied,* 301 Or. 240, 720 P.2d 1279 (1986), turned on a provision in Oregon's workers' compensation law which

provided that the controlling law is "the law in force at the time the injury *giving rise to* the right to compensation occurred." [Emphasis added.] The court, rejecting Professor Larson's view, interpreted the statutory language to mean that the legislature wanted the exposure rule to apply since the language of the provision seemed to recognized the injury as separate from the right of compensation. *Id.* at 1099–1100. *Johnson* resulted in denying the claimant benefits altogether because at the time of his exposure there was no workers' compensation statute; the court was concerned about holding insurers liable retroactively.

Both Virginia and Maryland have adopted the manifestation rule for determining the time of injury in occupational disease cases. *See* Virginia Code Ann. title § 65.1–49 (1987 Repl.) ("first communication of the diagnosis of an occupational disease ... shall be treated as the happening of an injury"); MD.CODE ANN. art. 101 § 67(15) (1979 & 1985 Repl.) ("Disablement ... means the event of an employee's becoming actually incapacitated, either partly or totally, because of an occupational disease"). *See also Lucky Stores, Inc. v. Street,* 63 Md.App. 664, 673–75, 493 A.2d 431, 436 (1985) (no disability claim for an occupational disease absent actual incapacitation) (citing *Belschner v. Anchor Post Products,* 227 Md. 89, 95, 175 A.2d 419 (1961)). *See also Meiggs, supra,* 545 A.2d at 637 (D.C. Council reviewed Maryland workers' compensation statute in drafting legislature leading to the 1979 Act).

ed hardships as the result of substantive changes made in the 1979 Act regarding coverage. This appears to be the concern underlying the U.S. Department of Labor's position in support of application of the 1928 Act. Indeed, it is how we view the Secretary's promulgation of a regulation to assure coverage in light of uncertainties under the 1979 Act and its regulations and indications of the administrative interpretation of the 1979 Act.[21]

Under the 1979 Act, if "at the time of the injury the employment was [not] principally located in the District," D.C.Code § 36-303, there is no subject matter jurisdiction, and such claimants would be without any workers' compensation coverage under District of Columbia law.[22] Most jurisdictions adopting the manifestation rule do so to give occupational disease claimants the benefit of expanded coverage or benefits under the amended statute, the courts viewing the amendments as fulfilling the

purpose of assuring compensation for disabled workers.[23] The statutory trend in the District of Columbia has been the reverse, however, starting with broad coverage and generous benefits levels under the 1928 Act and moving to narrower coverage and lower benefits under the 1979 Act.

The coverage concern of the D.C. Council undoubtedly arose from the broad interpretation by the courts of coverage under the LHWCA.[24] Given the Council's express statement that its amendments would not prove inequitable for injured workers,[25] we conclude, that in narrowing subject matter jurisdiction under the 1979 Act to employment "principally localized" in the District of Columbia, the Council fairly assumed that an injured worker who did not meet that requirement would be "principally localized" elsewhere where coverage would be available.[26] There is nothing to suggest that the Council intended such workers to resort to tort remedies if they were not

---

**21.** The regulations promulgated under the 1979 Act provide that the 1979 Act would apply only to "injuries which occur" on or after the effective date of the 1979 Act. See 29 D.C.Reg. 5540 (1982). See also Franklin v. Blake Realty Co., et al., H & AS No. 84-26 (August 18, 1985) (DOES adopts manifestation rule, not for occupational diseases, but for a "cumulative traumatic injury," in the context of choosing between two insurers); Abebe v. Suburban Restaurants, H & AS No. 84-80 (July 21, 1985) (DOES declined to reach the issue because the record indicated that the disease manifested itself in 1983); Jones v. PEPCO, H & AS No. 83-183 (October 23, 1984) (DOES declined to reach the issue because the claimant could not recover under the 1979 Act under either rule: his exposure occurred prior to 1982, and after 1982, when his injury manifested itself, his employment was not principally located in the District).

**22.** It is not entirely clear whether there is subject matter jurisdiction of Gardner's claim under the 1979 Act. DOES has formulated a three-part test for construing the term "principally located:"
 1) The place(s) of the employer's business office(s) or facility(ies) at which or from which the employee performs the principal service(s) for which he was hired; or
 2) If there is no such office or facility at which the employee works, the employee's residence, the place where the contract is made and the place of performance; or
 3) If neither (1) nor (2) is applicable, the employee's base of operations.

See Hughes, supra, 498 A.2d at 569. But see Petrilli v. District of Columbia Dep't of Employment Servs., 509 A.2d 629, 633 (D.C.1986) (3 part test need not have universal application so long as claimant's employment relationship with the District of Columbia has contacts more substantial here than elsewhere). See also Jones v. PEPCO, supra note [21], H & AS No. 83-183 (October 23, 1984) (claimant who worked for employer in the District of Columbia from 1952 to 1982, who was transferred to Maryland facility a few months before effective date of the 1979 Act, not principally located in the District).

**23.** See note [20], supra.

**24.** See note [12], supra. See also Legislative History, supra note [13], Rpt. of H & CD Cte, at 13 (coverage under the Act is limited to where there is a "legitimate relationship" between the employment of the injured worker and the District of Columbia).

**25.** See Legislative History, supra note [13], Rpt. of PS & CA Cte at 5 (new bill "does not include changes in the law which will result in a loss of benefits or inequities to workers"). We note, too, that the Council postponed the effective date of the 1979 Act until this court had upheld the authority of the D.C. Council to enact it. See O'Connell, supra, 495 A.2d at 114; District of Columbia v. Greater Wash., supra, 442 A.2d 110.

**26.** See LARSON'S WORKMEN'S COMPENSATION, supra, § 5.30, at 39 (all states have adopted workers' compensation acts).

covered by the 1979 Act,[27] or that the Council intended to change the fundamental nature of the District's workers' compensation scheme assuring compensation for disability in an efficient and economical matter. *See Meiggs, supra,* 545 A.2d at 637.

In addition, the principles of retroactivity dictate against applying a statute where doing so would be "manifestly unjust." *Hastings v. Earth Satellite Corp.,* 202 U.S.App.D.C. 85, 92–94, 628 F.2d 85, 92–94, *cert. denied,* 449 U.S. 905, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980) (citing *Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974)). Although it is true, as Railco asserts, that Gardner had no legitimate expectation that the 1928 Act would forever prescribe the precise extent of his workers' compensation remedy for a disability derived from a future injury,[28] he certainly had a legitimate expectation that he would be covered by some workers' compensation scheme for injuries incurred from his employment with Railco (regardless of whether he would in fact actually receive disability benefits). *See* note [26], *supra.* This expectation is consistent with the "liability incurred" language of the federal savings clause, see *supra* note [16], and several general rules which have emerged from state decisions to ensure coverage to injured workers under amended statutes.[29] *See also Greene v. Owens–Corning Fiberglas Corp.,* 682 F.Supp. 304, 307 (M.D.La.1988) (employer's

liability is incurred for acts which occurred during employment relationship); *Agostin v. Pittsburgh Steel Foundry Corp.,* 354 Pa. 543 at 547–50, 47 A.2d 680 at 683 (1946) (law at time of exposure gives rise to substantive right to compensation, notwithstanding procedural changes in later amendment); *Todd Shipyards Corp. v. Black, supra,* 717 F.2d at 1291 (coverage under LHWCA does not usually terminate because injuries manifest themselves after employment has ended); *Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Spence,* 591 F.2d 985 (4th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979) (employer's insurance carrier liable for death benefits arising from the employee's death in 1972 even though its policy with employer terminated in 1971). Even Railco distinguishes between cases involving "a change in the nature or location of the work, which gives rise to a question of subject jurisdictional coverage," and cases involving only a "temporal coverage issue, that is, whether an amendment enacted between the time of exposure and manifestation applies to bar the claim," and concede that the former category of cases "may properly be resolved with reference to the time of exposure because the mere fact of later non-covered exposure should not defeat the claim." The federal courts also have recognized the continued availability of workers' compensation coverage under the LHWCA where state law is inadequate. *Cf. Sun Ship, Inc. v. Pennsylva-*

---

**27.** The legislative history of the 1979 Act refers to the Council's intent that compensation under that Act be in lieu of judicial action. See Legislative History, *supra* note [13], Rpt. of H & CD Cte, at 14; *see also Grillo, supra,* 540 A.2d at 747–48, 754.

**28.** *See, e.g., Hastings, supra,* 202 U.S.App.D.C. at 93–94, 628 F.2d at 93–94 ("Modification of remedy merely adjusts the *extent* ... of liability in instances in which the possibility of liability previously was known. For this reason, absent contrary direction ... courts are more inclined to apply retroactively changes in remedies than charges in liability.") (emphasis added) (footnotes omitted).

**29.** Relevant here are the rules that (1) where the last exposure occurs before but not after the effective date of a new law and the injury al-

ready allegedly caused by the exposure was not manifest until after, if the employment relationship remains in tact after the effective date of the new law, the new law applies, and (2) where the last exposure occurs before but not after the effective date of the amendment and the injury allegedly caused by the exposure was not manifest until after, if the employment relationship cases before the amendment takes effect, the amendment does not apply. *Hall v. Synalloy Corp.,* 540 F.Supp. 263, 270–71 (S.D.Ga.1982). Another rule appears to be that when coverage is dependent on the law in effect during the employment relationship, the amount of compensation is dependent on the law in effect at the time of the disability. *Id.* at 271 (amount of compensation, being remedial in nature, can have retrospective application). *See also Cropley v. Alaska Juneau Gold Mining Co.,* 131 F.Supp. 34, 35–36 (D.Alaska 1955).

*nia,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980) (Congress intended LHWCA to have concurrent jurisdiction with state compensation laws to remedy paucity of state coverage); *Todd Shipyards, supra,* 717 F.2d at 1286 n. 5 (no guarantee that claimant would be fully covered by states' workers' compensation statute).

### D.

Accordingly, we hold that the 1979 Act applies to Gardner's claim unless he is deprived of coverage under that statute, and under any other state statute, in which event the 1928 Act will apply. The 1979 Act applies because his disease did not manifest itself until after the 1979 Act became effective and the employer of last exposure, Railco, was his employer at the time of the last exposure and at the time the disease became manifest. Our holding is consistent with the intent of the D.C. Council to replace the 1928 Act with an economically competitive workers' compensation scheme in the 1979 Act and with the rule against retroactive application of statutes affecting substantive rights. Affording coverage under the 1928 Act where the employer is the same at the time of the injurious exposure as well as at the time of manifestation after the effective date of the 1979 Act also is consistent with such indications as there are that the Council did not intend for an injured employee to be without workers' compensation coverage as a result of the enactment of the 1979 Act.

Thus, an occupational injury claimant who meets both the temporal and geographic jurisdictional requirements of the 1979 Act will be covered by the 1979 Act, and, like accidental injury victims covered by the 1979 Act, subject to the benefit levels of the 1979 Act. This is not a retroactive application of the new statute since only the claimant's remedy is affected. A worker whose claim is covered by the 1979 Act cannot seek compensation under the more generous 1928 Act just because some of the claimant's exposure occurred prior to the effective date of the 1979 Act.

Pursuant to our holding, we anticipate that most long-latency cases will be adjudicated under the 1979 Act, which accords with the D.C. Council's intent to "divorce[ ] the local workers' compensation system entirely from the [LHWCA]." *O'Connell, supra,* 495 A.2d 1134 (D.C.1985).[30] In a small category of cases, claimants with occupational injuries may not be covered by the 1979 Act because of its stricter jurisdictional requirements. Since such a result would affect a worker's substantive right to coverage under the 1928 Act to receive workers' compensation in some form for injuries incurred while working in the District, the 1928 Act will apply unless the claim is covered under a state workers' compensation statute.

**30.** *O'Connell, supra,* 495 A.2d 1134, interpreting D.C. Council intent to repeal the 1928 Act, did not address the situation where an employee's

claim is not covered under any workers' compensation scheme.